COMMONWEALTH vs. TIMOTHY J. FLUKER.

Suffolk. November 10, 1978. — January 18, 1979.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide. Self-Defense. Practice, Criminal,* Instructions to jury, Exceptions: failure to save exception.

Introduction in evidence at a murder trial of a tape recorded statement by the defendant in which he claimed to have acted in self-defense did not entitle the defendant to a directed verdict where there was sufficient evidence to warrant a finding of malice. [126-129]

The judge at a murder trial did not err in his instructions to the jury on the issue of self-defense. [129-130]

Where the defendant at a murder trial failed to request a specific instruction as to evidence that he acted in the heat of passion or sudden provocation or to object specifically to the judge's failure to give such an instruction, this court did not review the issue on appeal. [130]

INDICTMENTS found and returned in the Superior Court on February 17, 1977.

The cases were tried before *Lynch*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Martin K. Leppo* for the defendant.

*Paul A. Mishkin*, Special Assistant District Attorney, for the Commonwealth.

HENNESSEY, C. J. The defendant was tried before a Superior Court judge and jury on indictments charging murder in the first degree, armed robbery and assault with intent to murder. He was convicted of murder in the second degree, larceny, and assault with intent to murder. The trial judge ordered that the larceny conviction be placed on file and then sentenced the defendant to life imprisonment on the murder conviction, and eighteen to twenty years, concurrent with the life sentence, on the assault conviction.

The defendant appealed, arguing three assignments of error: (1) the denial of his motions for directed verdicts; (2) the judge's instructions to the jury concerning the Commonwealth's burden of disproving self-defense; and (3) the judge's failure to instruct the jury as to the Commonwealth's burden of proving the absence of provocation. We transferred the case to this court on our own motion. We find no error. Nor do we think that it would be in the interests of justice for us to reduce the murder conviction to manslaughter under G. L. c. 278, § 33E, as defense counsel requested during oral argument. Accordingly, we affirm.

The facts are as follows. On February 3, 1977, at approximately 9 P.M., Fluker arrived at the New England Theaters offices in the Roxbury section of Boston. One Danny Rogers was with him. Michael Sanders, the owner of the theater, and Clarence Brown, an employee, were the only persons present in the offices at that time. Around midnight, one Carlton Bond arrived. Brown remained in the front office typing some letters while the others watched the movie "Deep Throat" in a back room. At approximately 12:45 A.M. Bond left to go home, and Fluker and Rogers left to purchase some beer and wine at an "after-hours" liquor store. Fluker and Rogers returned approximately forty-five minutes later, poured some wine for Brown and then went into the back room where Sanders was still watching the movie.

Brown testified that, within the next hour, the defendant and Rogers made three trips to the men's room together. Rogers also came out once alone to request that the volume on the stereo be turned up. Brown suggested that Sanders's permission should be obtained first. Shortly thereafter, Fluker came into the front office, turned up the volume and returned to the back room. Some time later, Fluker and Rogers both came into the front office and Brown asked them to tell Sanders to come out for a minute as well. They left, returned a few minutes later, and told Brown that Sanders wanted to see him in the back room. Brown started toward the back room, with the defendant and Rogers behind him. He was shot behind the left ear and lost consciousness.

At approximately 10:30 A.M. on February 4, 1977, Ricky Sanders (Michael Sanders's brother) and a friend arrived at the Theaters offices. They knocked on the door for several minutes. Finally, Brown emerged and opened it. He was covered with blood; he passed out, and was set down on a couch. Ricky Sanders then went to get the police (the station was across the street). When Ricky Sanders returned, he discovered that several valuables were missing: a new color television, a stereo receiver and turntable, a reel to reel tape player, and a few records and films. He also found that the door to Michael Sanders's office had been forced open and was off its hinges, the ceiling had been ripped down, the drawers of the desk inside were open and papers were strewn about. There was also an empty and mutilated cash box on the floor. On entering the back room, Ricky Sanders found Michael lying face down on the floor with his underwear pulled down around his ankles. The T-shirt he was wearing had had a large section torn from the back. On the floor nearby were Michael Sanders's pants, which had been pulled inside out, a screwdriver, a spent .25 caliber casing, a spent lead slug, a can of mace and numerous blood stains. Sanders's wallet, some personal papers and a bankbook were scattered some distance away from his body.

The medical examiner testified at trial that Michael Sanders died of a gunshot wound to the head. He also stated that Sanders suffered a gunshot wound to the hand, various abrasions, and a fractured skull.

On the evening of February 4, 1977, Sergeant Robert Hudson arrested the defendant in the emergency room of the Peter Bent Brigham hospital. The defendant was being treated for a gunshot wound in the left hand. After being properly advised of his Miranda rights, the defendant made a statement to Sergeant Hudson. That statement was tape recorded and introduced in evidence at trial. We summarize its substance as follows.

At some point during the early morning hours of February 4, 1977, Sanders asked Fluker into Sanders's private office and proposed that they have homosexual intercourse. Fluker declined the invitation. Sanders then took a screwdriver, used it to open a locked back room (not part of New England Theaters), and invited Fluker to join him. When Fluker entered the back room, Sanders's pants were down around his ankles. Sanders then dropped the screwdriver, reached down into the pocket of his pants, produced something flashing and shot Fluker in the hand. Thereafter, a struggle ensued during which Sanders was shot in the head. Fluker then ripped off a piece of Sanders's T-shirt, left Sanders vomiting blood on the floor and went into the men's room to wash. When he emerged from the men's room, Brown asked him where Sanders was. The defendant gestured toward the back room. As Brown started in that direction, Rogers shot him from behind. Fluker then left the premises, with Brown unconscious but still moving on the floor, took a taxi cab to his girlfriend's house and walked home from there.

1. *The motion for a directed verdict.* The defendant contends that the judge erred in denying his motion for a directed verdict of not guilty on the murder indictment.[1] The defendant rests this contention on two

_____

[1] The defendant filed motions for directed verdicts and for judgments notwithstanding the verdicts on all three indictments. On ap-

grounds: (1) the Commonwealth failed to rebut beyond a reasonable doubt the "presumption" of self-defense raised by the introduction of Fluker's tape recorded statement; and (2) there was insufficient evidence for the jury to find the defendant guilty of murder committed in the course of a robbery or armed robbery. We disagree. Our reasoning is as follows.

When the issue of self-defense is properly before the trier of fact, the Commonwealth must, as a matter of due process, prove beyond a reasonable doubt that the defendant did not act in self-defense. *Commonwealth* v. *Collins,* 374 Mass. 596 (1978). *Commonwealth* v. *Stokes,* 374 Mass. 583 (1978). *Commonwealth* v. *Rodriguez,* 370 Mass. 674 (1976). Cf. *Commonwealth* v. *Greene,* 372 Mass. 517 (1977); *Commonwealth* v. *Johnson,* 372 Mass. 185 (1977) (both holding that the prosecution bears the burden of proving the absence of provocation). Self-defense may properly be raised either by the prosecution as part of its case in chief or through evidence brought forth by the defense. *Commonwealth* v. *Rodriguez, supra.* We recognize that, in the instant case, self-defense was placed in issue when the Commonwealth introduced Fluker's tape recorded statement in evidence. However, the defendant erroneously characterizes the self-defense concept as a "presumption," rather than as an inference that the jury are permitted to draw.

---

peal, he asserts as error the denial of his "several" motions for directed verdicts. However, apart from the reference to his "several" motions, which can be found in only one sentence of the defendant's brief, the defendant has elected to address the murder issue exclusively. We therefore treat whatever objections he has concerning the denial of his other directed verdict motions as waived under S. J. C. Rule 1:13, as amended, 366 Mass. 853 (1974). We add that, in our view, there was sufficient evidence for the jury to convict the defendant of larceny (the jury's verdict makes unnecessary our review of the evidence as to armed robbery or robbery) and assault with intent to murder. Thus, defense counsel's election not to address those issues has caused no particular hardship to the defendant in this case.

The jury are entitled to disbelieve the evidence that the defendant acted in self-defense. There is no constitutional principle which bars the conviction of a defendant when there is evidence warranting an inference of malice and also evidence warranting, but not requiring, a finding that the defendant acted in self-defense. Cf. *Commonwealth* v. *Greene, supra* at 520. In *Commonwealth* v. *Stokes, supra* at 593, we stated that "if there is evidence that the defendant was privileged to use force to defend himself *and, if that evidence is believed by the jury,* the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant acted with excessive force" (emphasis supplied). It is axiomatic that the Commonwealth bears the same burden in proving that the defendant did not act in self-defense at all. However, what is important is that when the issue is raised, it is for the jury to consider on proper instructions, and when error is claimed with respect to a denial of a directed verdict motion, this court is obliged to consider the evidence in its light most favorable to the Commonwealth. The sole question raised is whether the evidence, considered in that light, is sufficient to permit the jury to infer the essential elements of the crime charged. *Commonwealth* v. *Sandler,* 368 Mass. 729, 740 (1975). *Commonwealth* v. *Baron,* 356 Mass. 362, 365 (1969). *Commonwealth* v. *Altenhaus,* 317 Mass. 270, 271 (1944).

We think that the evidence in this case warranted submission of the murder question to the jury. The defendant's own tape recorded statement both proved the homicide and placed self-defense in issue. The defendant argues that the Commonwealth must produce additional evidence to disprove self-defense and cannot rely solely on his statement for that purpose. We see no reason why the jury may not believe the defendant's admission with respect to the killing and reject his claim of self-defense. Nor do we see any reason why the same evidence that puts self-defense in issue cannot also refute the theory of self-defense. This is especially true where, as here, the

defendant's statement goes beyond a mere claim of self-defense and describes the entire incident in a manner which raises serious questions as to his claim. We note also that the Commonwealth did produce separate rebuttal evidence, e.g., Brown's testimony, which contradicted the defendant's, the circumstantial evidence of the condition of the offices, the evidence of theft and the condition in which the body was found.

The defendant's contention that he was entitled to a directed verdict because there was insufficient evidence of a killing committed in the course of a robbery or armed robbery is equally fallacious. Even if the defendant's estimation of the evidence is correct, a question that we do not decide, the jury's verdict has cured any error. The judge instructed the jury on murder committed in the course of a robbery or armed robbery in order to permit a verdict of murder in the first degree. G. L. c. 265, § 1.[2] However, the jury convicted the defendant of murder in the second degree. As the judge's charge included an appropriate instruction as to malice and permitted a verdict of murder in the second degree on a finding that the defendant killed Sanders intentionally and without excuse or justification, we conclude that there was no error.[3]

*2. Instructions on self-defense.* The defendant asserts as error the following instruction to the jury: "[I]f you have a reasonable doubt whether or not [the defendant] acted in self defense, the verdict must be not guilty." It is contended that the jury might have interpreted the judge to mean that the defendant bore the burden of proof on the

---

[2] The judge ruled as matter of law that there was no evidence of "premeditation" or "extreme atrocity or cruelty."

[3] We note that participation in a common larcenous enterprise is sufficient to support a conviction of murder in the second degree under the felony-murder doctrine. *Commonwealth* v. *Corcione,* 364 Mass. 611, 619 (1974). However, the judge did not instruct the jury as to participation in a common larcenous enterprise, although he instructed as to larceny itself. We therefore do not rely on the felony-murder theory in affirming the defendant's conviction.

issue of self-defense. Even assuming that the instruction could be interpreted as the defendant suggests,[4] we must consider the charge in its entirety when determining whether constitutional requirements as to the burden of persuasion have been met. *Commonwealth* v. *Collins, supra* at 599. *Commonwealth* v. *Rodriguez, supra* at 690-691. *Commonwealth* v. *Ramey*, 368 Mass. 109, 113-114 (1975). *Commonwealth* v. *Benders*, 361 Mass. 704, 707 (1972). Cf. *Cupp* v. *Naughten*, 414 U.S. 141, 146-147 (1973); *Boyd* v. *United States*, 271 U.S. 104, 107 (1926).

We conclude that in the instant case the over-all charge could not have been more clear or correct as to who bore the burden of proof on the self-defense issue. The judge repeatedly stated that the Commonwealth must prove beyond a reasonable doubt that the defendant had not acted in self-defense. Thus, we reject the defendant's contention that the jury might have experienced confusion and rendered their verdict in violation of the constitutional principle.

3. *Instructions on provocation.* As with self-defense, the Commonwealth bears the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion on sudden provocation. *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975).[5] *Commonwealth* v. *Greene, supra.* The defendant in the case presently before us did not request a specific instruction to that effect. Nor did he register an appropriate objection or exception when the judge failed to give such an instruction. We are not at all

[4] This is an assumption that we do not make. The instruction quoted is virtually identical to one set out in the margin in *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 692 & n.10 (1976), as an "appropriate instruction."

[5] See *Gagne* v. *Commonwealth*, 375 Mass. 417, 420 n.3 (1978), for comment on *Patterson* v. *New York*, 432 U.S. 197 (1977), which arguably casts doubt on the *Mullaney* holdings, even though *Hankerson* v. *North Carolina*, 432 U.S. 233 (1977), decided the same day as *Patterson*, gave *Mullaney* full retroactive effect. In any event, it is the intention of this court to follow the principles set out in *Mullaney* and the Massachusetts cases decided under it.

convinced that the evidence even raises the issue of heat of passion on sudden provocation. However, even assuming that it does, the defendant's failure to request the appropriate instruction or to object specifically to the deficiency now argued as to the judge's charge precludes appellate review.

It is true that we have previously reviewed cases on appeal in which the appropriate procedural action was not taken by defense counsel. See *Commonwealth* v. *Harris*, 376 Mass. 201 (1978); *Gagne* v. *Commonwealth*, 375 Mass. 417 (1978); *Commonwealth* v. *Collins, supra; Commonwealth* v. *Stokes, supra*. However, the trials in all of those cases took place either before *Mullaney* or before *Rodriguez*, and defense counsel did not have the benefit of this court's or the Supreme Court's views on the burden of proof issue. We granted review in those cases, because to do otherwise would have been "tantamount to requiring clairvoyance on the part of defense counsel." *Commonwealth* v. *Stokes, supra* at 588. However, even in *Collins*, in which the trial occurred prior to *Rodriguez*, we warned that "the administration of criminal justice is badly served when serious allegations of error in trial or pre-trial rulings are asserted for the first time at the appellate level." 374 Mass. at 601. We heard the appeal in that case, nonetheless, because the state of the law at the time of the trial was arguably uncertain. There existed no such uncertainty at the time of the defendant Fluker's trial. Accordingly, we will not hear him to complain for the first time on appeal.

4. *Review under G. L. c. 278, § 33E.* In oral argument before this court, the defendant requested that we exercise our powers, under § 33E, to reduce the murder conviction to manslaughter, in the event that we rejected his appeal as to instructions on provocation. Consistent with our duty under § 33E, we have considered the entire case on the law and the evidence. However, we are unable to conclude that the verdict was against either. Nor do we think that the interests of justice require entry of a lesser degree of guilt than that found by the jury.

*Judgments affirmed.*