**James GARDNER, Petitioner, Appellant,**

v.

**Joseph PONTE, et al.,
Respondents, Appellees.**

**No. 86–1497.**

United States Court of Appeals,
First Circuit.

Argued Oct. 10, 1986.

Decided April 29, 1987.

---

Carol A. Donovan, Committee for Public Counsel Services, for petitioner, appellant.

Linda G. Katz, Asst. Atty. Gen., Crim. Bureau, with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., Chief, Crim. Bureau, and Barbara A.H. Smith, Asst. Atty. Gen., Chief, Appellate Division, were on brief for respondents, appellees.

Before CAMPBELL, Chief Judge, BOWNES and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Petitioner appeals from an order of the U.S. District Court for the District of Massachusetts denying his petition for a writ of habeas corpus. We affirm that decision.

In 1975, James Gardner was convicted in Massachusetts state court of second degree murder for the beating of his girlfriend. Gardner filed an appeal which was dismissed two years later for failure to prosecute. Through new counsel, defendant then filed a motion for post-conviction relief. This motion was denied by the trial court, the Massachusetts Appeals Court and the Supreme Judicial Court. The defendant subsequently filed the present petition for a writ of habeas corpus before the district court. The district court denied the writ. On appeal, petitioner makes two principal arguments: 1) the trial court erred in its jury instructions and 2) ineffective assistance of counsel.

## I. Background

At the state court trial, the evidence showed that petitioner's girlfriend, Delores Taylor, had been beaten during the night and was taken to the hospital the following morning. The medical examiner testified that Taylor was immediately operated on for severe liver damage due to blows by a blunt instrument. Without the operation, Taylor would have died immediately. Thirteen days later, she died; the cause of death was bronchopneumonia, brought on by her weakened condition, and lacerations of the liver, intestines and omentum. A neighbor, Mary Kelly, testified that, on the evening in question, she had seen the petitioner arrive in a yellow van and enter Taylor's apartment. She heard "angry" voices, and a while later, screams. A few months before this incident she saw petitioner hit Taylor with a chair. Two days after the incident, petitioner came to Kelly's apartment to ask where Taylor's child was and to obtain the key to Taylor's apartment. Kelly told petitioner that she had just returned from seeing Taylor at the hospital and said, "It's a shame the way she was beaten. I mean it's a shame that you did something like that." In response, petitioner stated, "She deserved it. She had it coming to her." Petitioner did not take the stand; the only witness the defense presented was petitioner's former employer who testified that on the night of the beating Gardner did not have access to the yellow van which Kelly claimed to have seen.

## II. The Erroneous Jury Instructions

Petitioner argues that the trial court erred in its jury instructions by allegedly directing a verdict on the cause of death and on the lawfulness of the homicide and by failing to define legal causation. Petitioner did not, however, object at trial, as required by Massachusetts procedural law. *Commonwealth v. Fluker*, 377 Mass. 123, 131, 385 N.E.2d 256 (1979). Thus, we must consider, as a preliminary matter, whether the claims are barred from federal habeas review under the principles of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), for failure to object at trial. *Wainwright* holds that if a defendant fails to object at a state trial to an alleged judicial error, federal habeas courts do not have to reach the merits of the federal claim. The federal district court held that *Wainwright* did not bar substantive review because the Massachusetts Appeals Court had waived the procedural

ground and decided the merits of the federal claim. The district court went on to conclude that the contested jury instructions were constitutionally adequate.

 Under *Wainwright*, the state must in fact have a "contemporaneous objection" rule which it enforces. The defendant can overcome this obstacle by showing both "cause" for and actual "prejudice" from not having objected at trial. *See id.* at 87, 97 S.Ct. at 2506–07. Massachusetts does have, and enforces, a "contemporaneous objection" rule. *Commonwealth v. Fluker, supra,* 377 Mass. at 131, 385 N.E.2d 256. The next question is whether petitioner can show cause for his failure to object to the jury trial instructions when given. As the cause of his failure to object, petitioner alleges ineffective assistance of counsel, and in the alternative, attorney error.[1]

Ineffective assistance of counsel constitutes cause for failure to object. *Murray v. Carrier,* — U.S. —, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986). Petitioner argues here that his trial counsel's failure to object to jury instructions that allegedly directed a verdict on the cause of death and on the lawfulness of the homicide, and that failed to define legal causation, demonstrates that counsel's performance fell below that of a reasonably competent lawyer. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984).

Petitioner asserts that the following portions of the jury charge were blatantly egregious:

Now, does the evidence that you have heard in this case satisfy you? Did James Gardner beat this woman, and did he beat her with malice aforethought as the Commonwealth alleges? And I will tell you what malice is and what aforethought is. Are you satisfied that he did? If you are satisfied that he did, you

say so. If you have doubt that he did, you say so.

\* \* \* \* \* \*

This is known as a homicide. Now, the death of this lady is what is known as a homicide. You heard two officers say they are in the Homicide Division. Homicide, in which murder is the highest of the criminal specialties is in varying degrees according to the circumstances. The term in its larger sense embraces every mode by which the life of one person is taken by the act of another.

\* \* \* \* \* \*

Now, you can bring in a verdict of guilty of murder in the second degree if you are satisfied there was malice aforethought when he applied a beating to this woman and you are satisfied that he did kill her beyond a reasonable doubt.

Gardner asserts that these instructions are flawed, first, because they tell the jury that, if they find he beat the victim and did so with malice aforethought, that they should find him guilty of second-degree murder, *i.e.,* directing a verdict on the disputed issue of proximate cause. Second, the court failed to instruct the jury on the legal definition of cause, thereby creating the risk that the jury did not consider the essential element of causation. Finally, in a concurrent instruction the court invaded the province of the jury by instructing the jury that the case at bar involved an unlawful homicide, thereby removing from their consideration a second element of the crime charged. The court stated:

Homicide may be lawful or unlawful. It is lawful when it is done in a lawful way upon an enemy in battle or done by an officer in the execution of justice upon a criminal warrant. It may be justifiable, of course, in self-defense. There is no contention here this is a lawful homicide; therefore, it is an unlawful homicide. It is the killing of a person without justification.

---

1. Petitioner did not address this argument in his briefs on appeal; nevertheless, he did address it in his briefs before the district court, which we have reviewed. Also, in this appeal petitioner makes an independent claim of ineffective assistance of counsel, which presents all the evidence necessary for the issue of cause.

■ In determining whether defense counsel's failure to object to the jury instructions constituted ineffective assistance of counsel, this court must start with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. The petitioner bears the burden of proving that specific acts or omissions of counsel are outside the range of professionally competent assistance. *Id.* at 687, 104 S.Ct. at 2064. He bears the further burden of showing that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In other words, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*[2]

■ Even assuming that Gardner's counsel should have objected to these jury instructions, and that failure to object was unprofessional error, we cannot conclude that there is any probability, much less a reasonable probability sufficient to undermine confidence in the outcome, that the result of the proceeding would have been any different had Gardner's counsel objected to the instructions on causation and unlawfulness of the homicide. The medical testimony was uncontroverted that the beating inflicted on the victim caused her death. If the surgery had not been performed immediately she would not have survived even those additional thirteen days. As for the unlawfulness of the homicide, Gardner does not even argue here that there was any evidence on which a jury could find that the homicide was justifiable. Based on the record, it is highly improbable that any reasonable jury, even if it had available to it more explicit instructions on causation and even if it had been instructed to determine whether the homicide were unlawful or not, would have concluded other than this jury did.[3]

■ Since petitioner has not established ineffective assistance of counsel, we turn to his alternative argument of attorney error. In *Murray v. Carrier, supra,* the Supreme Court held that attorney error short of ineffective assistance of counsel does not constitute cause unless petitioner can show "some objective factor external to the defense" which impeded counsel's efforts to comply with the State's procedural rule. —— U.S. at ——, 106 S.Ct. at 2645–46. Petitioner did not allege any objective factor nor can we discern any, and thus his claim of attorney error must fail.

Petitioner has not established cause for having failed to object to the jury instructions at trial. *Wainwright v. Sykes* makes it clear that both prongs, cause and prejudice, must be satisfied in order to overcome the procedural bar. *Supra,* 433 U.S. at 87, 97 S.Ct. at 2506–07. So we need look no further. However, even assuming cause, we do not believe petitioner has met the high burden of showing prejudice: "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982).

---

**2.** As the district court noted:

> In certain particularly egregious situations, the petitioner is relieved of the obligation of proving prejudice. It is presumed. These include situations where the defendant has been completely denied counsel, or where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *See United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984). In this case, counsel's alleged ineffectiveness at trial consisted of failing to object to three portions of the jury instructions. Gardner was represented throughout and his counsel vigorously cross-examined all of the prosecution's witnesses and put on a witness for the defense. Therefore, Gardner was afforded a "true and adversarial criminal trial," *id.* at 656, 104 S.Ct. at 2045, and cannot be relieved of his burden of showing prejudice.

*Gardner v. Ponte,* No. 85–3687–MA, slip op. at 17 n. 3 (D.Mass. May 6, 1986).

**3.** Both the Massachusetts Appeals Court and the federal district court denied Gardner's claims of ineffective assistance of counsel.

■ Our inquiry does not end here. In *Carrier*, the Court noted that " '[i]n appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Carrier, supra,* — U.S. at —, 106 S.Ct. at 2650 (quoting *Engle v. Isaac,* 456 U.S. 107, 135, 102 S.Ct. 1558, 1576, 71 L.Ed.2d 783 (1982)). "[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* at —, 106 S.Ct. at 2650. The test then is one of actual innocence. Did the contested jury instructions serve to "pervert the jury's deliberations concerning the ultimate question whether in fact petitioner constituted a continuing threat to society"? *Smith v. Murray,* — U.S. —, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). In view of the evidence presented at trial, it is very unlikely that technically correct jury instructions would have changed the verdict in this case. Our refusal to consider petitioner's defaulted claim carries no risk of a "manifest miscarriage of justice." *Id.*

■ There is one more issue which must be dealt with in regard to the procedural bar of petitioner's claim. The district court held that the procedural bar had been waived due to the state court's review of the merits on appeal. We disagree. State appellate courts may, in certain situations, examine the merits of a case to determine whether a substantial risk of a miscarriage of justice is present without waiving the procedural default. *See* Mass.R.Crim.P. 22 & Reporter's Notes (West 1980); *Gibson v. Butterworth,* 693 F.2d 16, 17 (1st Cir.1982). Whether such an examination constitutes a waiver depends on whether the state court relied upon federal rights, cases and legal principles in conducting its review. *Jackson v. Amaral,* 729 F.2d 41, 45 (1st Cir. 1984). "The greater the reliance on federal doctrine, the more likely we are to find waiver." *Id.*

Here, the Massachusetts Appeals Court clearly examined the jury trial instructions under the permissible miscarriage of justice standard of review. *See Gibson v. Butterworth,* 693 F.2d at 17. The decision rested completely on state case law. *Compare McCown v. Callahan,* 726 F.2d 1, 4 (1st Cir.), *cert. denied,* 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984). The court made one reference to a federal case, merely stating that petitioner had relied heavily on it, but it was inapposite. There was no mention of federal rights or principles.[4] Applying the principles of *McCown* and *Gibson,* we believe the state court did not waive the procedural defect and we hereby dismiss petitioner's claim.

### III. *Ineffective Assistance of Counsel*

Petitioner also appeals on the independent state ground of ineffective assistance of counsel. He properly raised this claim before the state courts on appeal and exhausted his state remedies. He bases his claim on two errors: 1) trial counsel's failure to object to the jury charge and 2) counsel's failure to prosecute petitioner's appeal. We have already discussed in full, *ante,* defense counsel's failure to object. We turn now to the second claim of ineffective assistance of counsel.

Gardner's court appointed trial counsel filed a notice of appeal after Gardner was sentenced but never took any further steps on his behalf. Six years after conviction, Gardner filed a motion to dismiss appointed counsel and for appointment of new counsel on the grounds of failure to prosecute his appeal. This motion was granted and

---

4. The district court held that since the state court relied on a Massachusetts case that rested on a federal constitutional analysis of harmless error, there was no waiver. However, even assuming the harmless error analysis was based on federal rather than state law, *see Gibson, supra,* at 18, this was not the basis for the state court's opinion. The appeals court clearly held that under Massachusetts law the jury instructions were not "pervaded with obvious error." After this full discussion, the Court, in one sentence, stated that, "[i]n any event" there could have been no harm resulting from the instructions. Harmless error then, was an alternative holding and was not the thrust of the court's opinion.

three years later, Gardner filed a motion requesting reinstatement of appellate rights, or, in the alternative, a new trial. After a hearing, the trial court ruled: "Motion to reinstate appellate rights denied. I find no meritorious issues. Motion for new trial denied. I find no prejudice to defendant by counsel's performance." The Massachusetts Appeals Court also reviewed the appeal in a four page opinion which fully addressed the merits. The Massachusetts Supreme Judicial Court then summarily denied Gardner's petition for further appellate review.

■ The question presented here is whether counsel's failure to perfect Gardner's appeal constitutes ineffective assistance of counsel or, whether, as the district court held, petitioner was effectively afforded his appellate rights by the Appeals Court, thus mooting this ground. We hold that the state's rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and that his first lawyer's negligence caused him no injury. *See Hollin v. Sowders,* 710 F.2d 264, 266 (6th Cir. 1983), *cert. denied,* 465 U.S. 1032, 104 S.Ct. 1300, 79 L.Ed.2d 699 (1984).

Gardner obtained a hearing before the trial court on all the issues he would have raised in a direct appeal. These same issues were reviewed by two appellate courts. Gardner had effective counsel, the issues were fully briefed, and the three courts, with the benefit of the trial transcript, reviewed them. The attorney's negligent failure to perfect the appeal did not cause petitioner any demonstrable harm, because petitioner's claims were "eventually considered and rejected on valid state grounds by the same court that would have heard his direct appeal." *Hollin v. Sowders, supra,* 710 F.2d at 269 (Merritt, J., concurring). There is no point in remanding to the state court to reconsider a case that it has already addressed. Thus, we agree with the district court that Gardner, belatedly but effectively, was allowed his appellate rights. *See id.*

For all of the foregoing reasons, the decision below is *affirmed.*