**UNITED STATES of America**

v.

**Terrence BOYD, George Sepulveda.**

**Nos. CR. 95–075–02ML, CR. 95–075–01ML.**

United States District Court,
D. Rhode Island.

June 17, 1996.

Gerard B. Sullivan, Assistant United States Attorney, Terrence P. Donnelly, Special Assistant United States Attorney, Providence, RI, for the U.S.

Edward L. Gerstein, Little Compton, RI, for Defendant Boyd.

Walter R. Stone, Providence, RI, for Defendant Sepulveda.

## MEMORANDUM

LISI, District Judge.

Terrence Boyd (Boyd) stands charged with violations of federal racketeering law that include predicate offenses of murder and three conspiracies to commit murder. The crimes for which Boyd is under indictment carry a maximum statutory penalty of death. *See* 18 U.S.C. §§ 3591, 3593. Boyd is one of four defendants who face the possibility of the imposition of the death penalty in this prosecution.

### Procedural Posture

On January 19, 1996, this court heard oral argument on three pre-trial motions filed by Boyd's co-defendant Shariff A. Roman (Roman). Roman requested that this court compel the Government to reveal (1) the aggravating circumstances submitted to the Department of Justice (DOJ) which qualified him for the imposition of the death penalty; (2) the "Death Penalty Evaluation Form" and any other relevant information submitted to the DOJ pursuant to the death penalty decision, and (3) certain racial data in death-eligible prosecutions. On January 24, 1996, this court issued an expedited order without a formal memorandum denying Roman's motions. On January 19, 1996, Boyd filed his motion[1] for "disclosure of aggravating and/or mitigating circumstances submitted to the [DOJ] pursuant to the capital penalty authorization procedure."[2] On February 5, 1996, this court issued an expedited order without a formal memorandum denying Boyd's motion. On June 10, 1996, this court issued a memorandum setting forth its rationale for denying Roman's motions. *See United States v. Roman*, 931 F.Supp. 960 (D.R.I.1996). This memorandum explains the reasons for denying Boyd's motion.

In essence Boyd's motion raises the same argument that Roman raised, however Boyd's argument is dressed in Sixth Amendment right to counsel garb. *See Roman*, 931 F.Supp. at 963. Boyd claims that by refusing to disclose the statutory aggravating and/or mitigating circumstances relied upon in its submission to the DOJ, *see generally* United States Attorneys' Manual § 9–10.000 C[3]; *see also* 18 U.S.C. §§ 3592, 3593(a), the Government has placed him in the "ring with an invisible opponent" resulting in the denial of the effective assistance of counsel. Defendant's Memorandum at 3. Boyd avers that the Attorney General's promulgation of the

---

1. Boyd's motion asks for the following:

   "Any and all aggravating and mitigating circumstances concerning the defendant which the local United States Attorney has submitted to the Department of Justice pursuant to the mandatory capital penalty authorization procedure; and

   ... Any and all aggravating and mitigating circumstances concerning all death penalty eligible co-defendants, so-called, to wit George Sepulveda, Shariff A. Roman, George Perry and Hakim Davis which the local United States Attorney has submitted to the Department of Justice pursuant to the capital penalty authorization procedure.

   The defendant seeks disclosure of those portions of the 'Death Penalty Evaluation Forms,' so-called, that set forth the aggravating and mitigating factors submitted by the local U.S. Attorney or, in the alternative, a statement of those factors. In support thereof defendant states that failure to disclose this information is tantamount to a denial of and interferes with his right to the effective assistance of counsel guaranteed under the Sixth Amendment of the Constitution of the United States and otherwise improperly infringes upon rights secured to him under the Fifth Amendment."

2. On February 2, 1996, co-defendant George Sepulveda filed a motion to adopt Boyd's motion. Sepulveda is under indictment for alleged racketeering crimes including conspiracy to murder and the murder of Jose Mendez, witness intimidation and extortion.

3. For a more detailed summary of the internal DOJ death penalty policies and procedures see *United States v. Roman*, 931 F.Supp. 960, 963–964 (D.R.I.1996).

policies and procedures (protocol) to be followed in all federal cases where the defendant is charged with an offense subject to the death penalty effectively deprives him of his Sixth Amendment right to counsel because the protocol does not authorize DOJ personnel to give defense counsel copies of documents prepared and submitted pursuant to the protocol. *See generally United States Attorneys' Manual,* § 9–10.000.

The protocol must be followed in all federal cases "in which a defendant is charged with an offense subject to the death penalty, regardless of whether the United States Attorney intends to request authorization to seek the death penalty." *Id.* The final decision whether to seek the death penalty is made solely by the Attorney General. *Id.* at D. The protocol establishes an internal DOJ mechanism for the submission of information by the local United States Attorney, review of that information by a committee appointed by the Attorney General, and a written recommendation from the committee to the Attorney General concerning application of the death penalty to the case. *Id.* at C, D, G. The protocol requires the United States Attorney to submit along with the Death Penalty Evaluation Form and prosecution memorandum "any written material submitted by counsel for the defendant in opposition to the death penalty being imposed on the defendant...." *Id.* at C.

Subsection D of the protocol requires that the committee appointed by the Attorney General give defense counsel an opportunity to present oral or written reasons why the death penalty should not be sought. *Id.* at D. The committee is further required to "consider all information presented to it, including any evidence of racial bias against the defendant or evidence that the Department has engaged in a pattern or practice of racial discrimination in the administration of the federal death penalty." *Id.*

Boyd claims that he is "required" either to advocate why the death penalty should not be sought or waive Boyd's right to participate in the process. Boyd avers that the Government's failure to disclose the aggravating and/or mitigating factors forces a "blindfolded defendant to waive certain fundamental rights in an effort to obtain a non-capital trial." Defendant's Memorandum at 8. Boyd contends that the DOJ protocol presents a "Hobson's"[4] choice for counsel by putting counsel in the position of advising the defendant to make "critical disclosures" that could result in the "irretrievable loss" of defenses or the creation of admissions regardless of whether the death penalty is sought. *Id.* at 13. Boyd avers that his efforts to show certain mitigating factors would be tantamount to a "de facto" admission of guilt. *Id.* at 15. Boyd concludes that the protocol makes it "virtually impossible for any attorney to provide effective assistance of counsel." *Id.* at 14.

The Government agrees that Boyd has a right to be effectively represented by counsel at trial and at all critical stages of the prosecution. However, the Government contends that the invitation to submit mitigating information and the defendant's participation in a meeting with the review committee are not critical stages of the proceedings. The Government also avers that Boyd has presented no authority where the Sixth Amendment right to counsel has been used to create a discovery right.

### *Discussion*

The Supreme Court has recognized that a person accused of a crime "requires the guiding hand of counsel at every step in the proceedings against him [or her]." *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932).

> " 'It is central to that principle that in addition to counsel's presence at trial, the accused is guaranteed that he [or she] need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial.' " *Coleman v. Alabama,* 399 U.S. 1, 7, 90 S.Ct. 1999, 2002, 26 L.Ed.2d 387 (1970) (quoting *United States*

---

**4.** "[T]he choice of taking either that which is offered or nothing; the absence of a real alternative." Random House Webster's College Dictio-nary, 637 (1992); *see generally Singer v. State of Maine,* 49 F.3d 837, 846 (1st Cir.1995).

*v. Wade,* 388 U.S. 218, 226, 87 S.Ct. 1926, 1931–1932, 18 L.Ed.2d 1149 (1967)).

Our adversarial system is based upon a foundation of vigorous representation which is dependent upon the "well tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question." *Penson v. Ohio,* 488 U.S. 75, 84, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988) (internal quotation marks and citation omitted). "The right to counsel plays a crucial role in the adversarial system ... since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942)). The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. at 684–686, 104 S.Ct. at 2062–2064. The guarantee of effective assistance of counsel is not valued for its own sake but "because of the effect it has on the ability of the accused to receive a fair trial." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984).

"It is axiomatic that the right to counsel attaches only upon 'the initiation of adversary judicial criminal proceedings' against the defendant, and thereafter *the right applies to all 'critical stages' of the prosecution,* before, during and after trial." *Roberts v. State of Maine,* 48 F.3d 1287, 1290 (1st Cir. 1995) (emphasis added) (quoting *United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984), *see also Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047 (noting that "a trial is unfair if the accused is denied counsel at a critical stage of his [or her] trial")). The Court has stated that the determination as to whether a proceeding constitutes a "critical stage" is dependent upon "an analysis whether potential substantial prejudice to defendant's rights inheres in the ... confrontation and the ability of counsel to help avoid that prejudice." *Coleman v. Alabama,* 399 U.S. at 9, 90 S.Ct. at 2003 (quoting *Wade,* 388 U.S. at 227, 87 S.Ct. at 1932). This principle requires that

courts "scrutinize any pretrial confrontation of the accused to determine whether the presence of his [or her] counsel is necessary to preserve the defendant's basic right to a fair trial...." *Wade,* 388 U.S. at 227, 87 S.Ct. at 1932. Critical stages can include those meetings conducted "at or after the initiation of adversary criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). The pivotal inquiry is whether "counsel's absence might derogate from the accused's right to a fair trial." *Wade,* 388 U.S. at 226, 87 S.Ct. at 1932; *see also Gilbert v. State of California,* 388 U.S. 263, 267, 87 S.Ct. 1951, 1953–1954, 18 L.Ed.2d 1178 (1967) (noting that the post-arrest pre-indictment taking of handwriting exemplars was not a critical stage of the proceeding because there was a "minimal risk that the absence of counsel might derogate from" the defendant's right to a fair trial); *United States v. Maceo,* 873 F.2d 1, 5 (1st Cir.), *cert. denied,* 493 U.S. 840, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989).

█ *Strickland* established two avenues by which a defendant may be denied effective assistance of counsel. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–2064. *Strickland* noted that a defendant may be denied the right to effective assistance of counsel when counsel fails to render "adequate legal assistance." *Id.* Claims of this type are sometimes called "actual ineffectiveness claims" and a plethora of case law explores its boundaries. *See generally, Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–2064; *Gates v. Zant,* 863 F.2d 1492 (11th Cir.), *cert. denied,* 493 U.S. 945, 110 S.Ct. 353, 107 L.Ed.2d 340 (1989). The benchmark for determining whether an attorney's performance has fallen below a constitutional guarantee is "whether counsel has brought 'to bear such skill and knowledge as will render the trial a reliable adversarial testing process.'" *Scarpa v. Dubois,* 38 F.3d 1, 8 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 940, 130 L.Ed.2d 885 (1995) (quoting *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–2065). In order to succeed on a claim of actual ineffec-

tive assistance of counsel, a petitioner must first show that counsel's acts or omissions were outside the range of professionally competent assistance. *Gardner v. Ponte*, 817 F.2d 183, 187 (1st Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987). "Judicial scrutiny of counsel's performance must be highly deferential.... [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Once a petitioner shows that counsel's performance was outside the range of professionally competent assistance he or she bears the further burden of showing that prejudice resulted as a consequence of counsel's deficient performance. *Scarpa*, 38 F.3d at 8. Put another way, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

■ A defendant may also be deprived of his or her right to effective assistance of counsel if the government "interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686, 104 S.Ct. at 2063 (citing *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (bar on attorney-client consultation during overnight recess); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (bar on summation at bench trial); *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972) (requirement that defendant be the first defense witness); *Ferguson v. Georgia*, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961) (bar on direct examination of the defendant)). In these situations of direct government interference or in situations where the defendant has been actually or constructively denied the assistance of counsel, the defendant need not show prejudice. *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067; *Cronic*, 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25; *Perry v. Leeke*, 488 U.S. 272, 279–280, 109 S.Ct. 594, 599–600, 102 L.Ed.2d 624 (1989) (recognizing that the Court has "expressly noted that direct governmental interference with the right to counsel is a different matter" with respect to whether prejudice must be shown for a successful Sixth Amendment claim); *Shillinger v. Haworth*, 70 F.3d 1132, 1141–42 (10th Cir.1995); *United States v. Hernandez*, 948 F.2d 316, 319–20 (7th Cir.1991); *see also Sparfven v. United States*, 577 F.Supp. 1430, 1438 (D.R.I. 1984) (noting that defendant did not suffer the "inherent prejudice" of "unwarranted interference by the court"); *see generally Satterwhite v. Texas*, 486 U.S. 249, 256, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988) (pervasive denial of counsel can never be considered harmless error).

■ The *Cronic* court further elaborated on the presumption of prejudice and noted other limited circumstances where prejudice would be presumed. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047. Prejudice would be presumed on "some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance of counsel is so small that a presumption of prejudice is appropriate...." *Id.* at 659–60, 104 S.Ct. at 2047. This circuit has noted that courts have been "cautious" in invoking *Cronic's* dictum and its corresponding presumption of ineffectiveness. *See Scarpa*, 38 F.3d at 12. In fact, the First Circuit has limited *Cronic's* reach to "extreme" cases, *see United States v. Moreno Morales*, 815 F.2d 725, 752 n. 33 (1st Cir.), *cert. denied*, 484 U.S. 966, 108 S.Ct. 458, 98 L.Ed.2d 397 (1987), the "rare instance," *see Scarpa*, 38 F.3d at 12, and "certain particularly egregious situations," *see Gardner*, 817 F.2d at 187 n. 2. The *Cronic* presumption can only be invoked "if the record reveals presumptively prejudicial circumstances such as an outright denial of counsel, a denial of the right to effective cross-examination, or a complete failure to subject the prosecution's case to adversarial testing." *Scarpa*, 38 F.3d at 12.

With the exception of the extreme situations outlined above, a defendant must show prejudice in order to succeed on a Sixth Amendment claim. "[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability

of the finding of guilt." *Cronic,* 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26, *see also Scarpa,* 38 F.3d at 12.

In this case, Boyd seems to intone the dictum of *Cronic* to support his claim for discovery. In short, he claims that the government's refusal to disclose the aggravating and/or mitigating factors submitted by the United States Attorney pursuant to the protocol so hampers his counsel's ability to render competent advice that he has been constructively denied the effective assistance of counsel guaranteed by the Sixth Amendment. *See Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067, *Cronic,* 466 U.S. at 658–659, 104 S.Ct. at 2046–2047. Boyd's argument fails for several reasons.

First, it must be noted that Boyd's participation in the meetings as outlined by the protocol is not mandatory; he is entitled "to present to the committee . . . the reasons why the death penalty should not be sought." United States Attorneys' Manual § 9–10.000 at D. The procedures outlined by the protocol do not contemplate an adversary proceeding where Boyd must be prepared to respond to the Government's list of aggravating circumstances it believes may justify a sentence of death. Instead, DOJ personnel are required to consider Boyd's proffer to the extent he chooses to make one. The committee is required to consider *all* information presented to it (the Government's submission as well as any submission a defendant chooses to make) before it makes its recommendation to the Attorney General. *Id.* at D. It is the Attorney General who, in the exercise of her prosecutorial discretion, "make[s] the final decision whether the Government should file a 'Notice of Intention to Seek the Death Penalty.'" *Id.* Presumably in the exercise of her prerogative, the Attorney General may accept or reject the recommendation of the committee. Thus, the decision to seek the death penalty rests squarely with one person, the Attorney General herself. The DOJ capital penalty authorization procedure does not encompass a pretrial confrontation or hearing where "counsel's absence might derogate from the accused's right to a fair trial." *Wade,* 388 U.S. at 226, 87 S.Ct. at 1932. This court finds that the invitation extended to Boyd to present mitigating information does not constitute a critical stage of the proceedings. Having determined that the invitation extended to Boyd does not represent a critical stage of the proceedings, this court concludes that Boyd's Sixth Amendment claim to discovery of the United States Attorney's submission to the DOJ is without merit.

Boyd also suggests that the DOJ capital penalty authorization procedure "implicates a defendant's Fifth Amendment rights of due process." Boyd, however, offers no legal reasoning, analysis or authority in support of his claim. It is not this court's responsibility to develop legal arguments or hypothesize what a defendant's position is with respect to a particular issue. By failing to proffer *any* legal reasoning or authority in support of his cavalier reference to the Fifth Amendment, Boyd has waived his claim. *See United States v. Levy–Cordero,* 67 F.3d 1002, 1019 (1st Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1558, 134 L.Ed.2d 659 (1996) (noting that "passing allusions are not adequate to preserve an argument in either a trial or an appellate venue") (internal quotation marks and citation omitted); *see also Rivera–Gomez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988) (noting that a "litigant has an obligation to spell out its arguments squarely and distinctly . . . or else forever hold its peace") (internal quotation marks and citations omitted).

In his initial memorandum, Boyd also sought what could only be characterized as "far flung" discovery, and as a matter of course, the Government responded to Boyd's requests by pointing to the applicable law. Subsequent to the denial of Boyd's motion, in a motion for reconsideration, Boyd limited his motion for discovery to the aggravating and/or mitigating circumstances submitted to the DOJ. Consequently, Boyd's other discovery requests have been withdrawn and this court need not discuss Boyd's assertions relating to those requests.

Last, this court has reviewed Boyd's "motion to reconsider and a request for an oral argument on defendant's motion for disclo-

sure" and concludes that the motion is wholly without merit and is therefore denied.