George L. REYNOLDS, Appellant,

v.

Jack C. ELLINGSWORTH, Warden and Charles M. Oberly, III.

No. 86–5633.

United States Court of Appeals, Third Circuit.

Argued Nov. 30, 1987.

Decided March 31, 1988.

*As Amended April 14, 1988.*

Opinion on Denial of Rehearing and Rehearing En Banc May 24, 1988.

8. In fact specific performance was denied as the plaintiffs could not convey a good fee simple marketable title.

Beverly L. Bove (argued), Tomar, Seliger, Simonoff, Adourian & O'Brien, Wilmington, Del., for appellant.

Loren C. Meyers (argued), Delaware Dept. of Justice, Wilmington, Del., for appellees.

Before WEIS, HIGGINBOTHAM and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal centers on the district court's determination that a procedural default in the state courts barred review of the merits of two claims raised in a petition for writ of habeas corpus challenging a state conviction. 28 U.S.C. § 2254 (1982). Petitioner asserts that the prosecutor's extensive references in his opening statement to two confessions that were never introduced into evidence, and the failure of the trial court to give a curative instruction, denied him due process. We hold that there exists no "independent and adequate state procedural ground," *Wainwright v. Sykes*, 433

U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), that, as a matter of federal law, bars the district court from reaching the merits of this due process claim. As to petitioner's three claims of ineffectiveness of counsel, however, we find that state remedies may not have been exhausted. Accordingly, we will vacate the decision of the district court and remand the matter for further proceedings.

## I.

Petitioner George Lee Reynolds, John Preston Rooks and Thomas Young were all charged in 1976 for the 1974 robbery and murder of Frank Snyder, a store owner in Milton, Delaware. Their arrest marked the culmination of a protracted criminal investigation in which a large number of people, including many who were viewed as suspects, were questioned about the Snyder murder. The three co-defendants were tried separately.

During his opening statement at Reynolds's trial, the prosecutor referred to Reynolds's confessions in this manner:

You will hear evidence that his co-conspirator held such a trance over the defendant that the defendant was afraid to come forward and testify and yet you will hear evidence that sixteen months after the crime, after speaking with another prison inmate about what he knew about this crime and after talking and receiving counsel from his father, one Jessie Lee James, he got it off his chest. He told the police about the crime and I believe that the testimony will reveal that he told the police about this crime on the 28th day of March, 1976. But, it's a kind of a funny statement, members of the jury panel. He tells about the crime and he tells about the crime with specific detail of things that no one could know unless they were there, details about the crime that had never been revealed in any publication. He told of details of the crime that had never been told to any newspaper or any radio station or to anybody except for the investigating officers. George Lee Reynolds knew certain details about that crime. Furthermore,

members of the jury, in addition to these details that he knew about the crime that you will hear about, he lied to us in addition. He told us half the truth. He didn't tell us all of the truth. . . . Is he telling us the truth on the 31st of March, because a little later on you are going to hear George Lee Reynolds say he made it all up to collect the reward. In other words, George Lee Reynolds retracted his story. How is it he retracted his story but he can't retract, members of the jury panel, those specific items that are of specific knowledge to the crime that George Lee Reynolds had when he "made up that story"?

Appendix ("App.") at 171–173.

Thereafter, an extensive mid-trial hearing was held to determine the admissibility of Reynolds's statements of February 13 and 17, and his confessions of March 28 and 31, 1976. Trial transcript ("T.T.") at 122–215.[1] At this proceeding, testimony was elicited regarding the voluntariness of the March 28 and 31 confessions. In addition, the prosecutor appeared to stipulate that Reynolds's attorney may not have been contacted prior to these interrogations, in violation of the sixth amendment right to counsel. He then, without argument, withdrew his offer of these confessions into evidence. App. at 224–26. The trial judge, after hearing argument based on fifth amendment grounds, ruled that the statements of February 13 and 17 were admissible. T.T. at 210. The trial, which through that point had heard testimony of some twelve witnesses regarding inconclusive physical evidence, resumed with the testimony of a Delaware police officer concerning the contents of the February 13 and 17 statements.[2] Id. at 223. During the course of the trial, defense counsel did not request, nor did the court give, a limiting instruction regarding the references in the opening statement to Reynolds's confessions.

The only witness to link Reynolds to the crime was Miles Cuffee, himself a former suspect. Prior to trial, Cuffee gave the police at least seven different accounts of how he acquired knowledge of the crime.[3] At trial, Detective French, a Delaware po-

1. Rule 5 of the Rules Governing Proceedings Under § 2254 requires that relevant portions of the state record be filed with the state's answer to the petition for writ of habeas corpus. See also Townsend v. Sain, 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963). Delaware has complied fully with this rule, and we take judicial notice of all relevant parts of the state court record, whether or not they appear in the joint appendix prepared by the parties to this appeal. See Swanger v. Zimmerman, 750 F.2d 291, 297 (3d Cir.1984). Citations will be both to the appendix and, where necessary, to the record.

2. This witness, Detective Perry, had been qualified at the hearing as an expert on "body language." He testified that on February 13, Reynolds had indicated by his body language that he "had some intimate knowledge of the incident." T.T. at 239. Perry then testified that Reynolds stated that the "person who committed this crime, was a black man . . . who lived in the Milton area and . . . was still . . . on the streets and free, coming and going as he pleased", id. at 239–40, and that a few days later Reynolds "explained to us that was all he was going to say because he didn't want to be a snitcher." Id. at 241.

3. Cuffee's first version, as told to Detective Wheatley on February 26, 1976, was that those responsible for the Snyder homicide had changed clothes in Cuffee's house. T.T. at 379–80. Cuffee's second story to Wheatley was that the subjects had hidden in the bathroom next door. Id. at 380. In a subsequent interview, Cuffee told Wheatley that, while Cuffee was "in a room at Draper's," he had seen blood on Young's and Reynolds' shoes, and that Young had told him that he had hit Snyder in the face with a baked bean can. Id. at 384–86. Version four was that Cuffee had returned home from a shopping trip to find ashes of burned clothing in his bathtub, after which Young had appeared, wearing a bloody T-shirt and asking to borrow a shirt. Id. at 387. At Reynolds' trial, Detective Wheatley, testifying for the defense, recounted all four of Cuffee's versions.

A tape of a February 26, 1976, interview between Detective French of the Delaware police and Cuffee was also played at Reynolds' trial. T.T. at 396–441. The first version on the tape was that, while Cuffee was shooting pool, he had overheard an argument between two people "who came to this camp with blood on them." App. at 120–21; T.T. at 398–417. Cuffee's next version was that he had been told by an unknown person that Reynolds had driven the car to Snyder's store on the day of the murder. App. at 117; T.T. at 432. His final version was that Reynolds himself had told Cuffee that he was the driver of the car. App. at 125; T.T. at 437.

lice officer, testified to some of Cuffee's prior inconsistent statements. T.T. at 379–89. These statements were apparently introduced by the prosecution at trial as substantive evidence against Reynolds, pursuant to a Delaware hearsay exception.[4] However, Cuffee himself would only testify affirmatively at trial to two events: that Young, in Reynolds's presence, had asked Cuffee if he wanted "to rip somebody off," and that Cuffee had seen Young, who was wearing a bloody shirt, with Reynolds in a car on the day of the murder. App. at 98–106; T.T. at 272–74, 276, 295–96, 299, 319–21, 325. The judge instructed the jury to disregard as hearsay Cuffee's testimony regarding Young's statement to Cuffee.[5] T.T. at 274. The final jury instructions did not include the standard admonition that opening and closing statements are not to be regarded as evidence. Reynolds was convicted on June 15, 1977 of first degree murder, first degree robbery and second degree conspiracy.[6]

On direct appeal, the Supreme Court of Delaware remanded the matter to the Superior Court to consider a new trial motion, based on newly discovered evidence that another person may have committed the crime, that had been filed after the notice of appeal.[7] App. at 161. After this new trial motion was denied, Reynolds took another appeal and the conviction was affirmed. *Reynolds v. State*, 424 A.2d 6 (Del.1980) (*per curiam*).

On June 29, 1982, Reynolds filed a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 35 ("Rule 35").[8] In this motion, Reynolds

---

**4.** This exception provides that

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

(b) The rule in subsection (a) of this section shall apply regardless of whether the witness's in-court testimony is consistent with the prior statement or not.

Del.Code Ann. tit. 11, § 3507 (1987).

The taped interview between French and Cuffee was introduced by defense counsel, probably to rebut Cuffee's testimony. The judge did not give a limiting instruction as to the use of this tape solely to impeach Cuffee's credibility. Similarly, Wheatley's testimony was introduced by the defense without a request for limiting instruction.

**5.** Cuffee subsequently repeated several times, however, that it was Young, not Reynolds, who had asked him to participate in the robbery. This testimony was elicited on both direct and cross-examination. There were no further objections on hearsay grounds to this testimony, and the trial court did not give additional instructions.

**6.** Proceedings against Rooks did not proceed as expeditiously. After two pretrial appeals by the government to the Delaware Supreme Court failed to overturn the trial judge's ruling that Reynolds' confessions of March 28 and 31, 1976 were involuntary and therefore not admissible, *State v. Rooks*, 411 A.2d 316 (Del.1980); *State v. Rooks*, 401 A.2d 943 (Del.1979), the trial judge directed a verdict of acquittal.

Young was convicted by a jury and his conviction upheld on direct appeal. *Young v. State*, 407 A.2d 517 (Del.1979). The trial judge granted, however, his motion for a new trial, based on newly discovered evidence that Miles Cuffee, the chief prosecution witness in all three trials, had known nothing about the murder but had testified nonetheless in an attempt to obtain a $2000 reward. *State v. Young*, No. 77–09–0001–0004, letter op. at 6 (Del.Super.Ct. Oct. 4, 1982). Thereafter, Young entered a plea of guilty to manslaughter.

**7.** At the trial court hearing on this motion, the chief investigating officer appeared as a defense witness and testified that a fingerprint found near the scene matched those of a person other than Reynolds. The trial judge, however, credited testimony by two other experts that "the controversial fingerprint was of no identification value," and he found that the "evidence as to the [the other suspect's] association at or near the scene of the crime was far less positive than suggested by the motion, and [that] some evidence relating to the [other suspect] and certain minibike tire tracks was in the police record all along...." *Reynolds v. State*, 424 A.2d 6, 8 (Del.1980) (*per curiam*).

**8.** This provision for post-conviction relief states that

[a]ny person who has been sentenced by the Court may apply by motion for postconviction relief for any meritorious claim challenging the judgment of conviction including claims: (i) That the conviction was obtained or sentence imposed in violation of the Constitution and laws of this State or the United States; (ii) that the Court imposing the sentence was without jurisdiction to do so; or (iii) that the sentence imposed exceeded the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law. An application may be filed at any time, provided, however, that postconviction relief shall

claimed for the first time that the prosecutor's references to the confessions during his opening statement, coupled with defense counsel's failure to request, and the trial judge's failure *sua sponte* to give, a limiting instruction, or to declare a mistrial, denied Reynolds due process under the Delaware and United States Constitutions. The state opposed the motion on the ground that the claims were procedurally barred by the holding of *Conyers v. State*, 422 A.2d 345 (Del.1980) (*per curiam*).

The court held two hearings to adjudicate the motion. Reynolds's two trial attorneys, one of whom also represented him on direct appeal, testified at both hearings as to whether they had made deliberate choices not to request a limiting instruction, to move for a mistrial and to raise the issue on direct appeal. App. at 68–85, 292–344. The Delaware Superior Court found that

> where no "contemporaneous objection" is made the holding of the Delaware Supreme Court in *Conyers v. State* ... requires that the [cause and prejudice] test established by the United States Supreme Court for determining when federal habeas corpus review must be applied when considering a Rule 35 motion.... Under the reasoning of *Engle[ v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982),] the situation existing here does not constitute cause justifying relief from the failure to make timely objection.

App. at 2–3, 7. It then denied the motion as to all claims. The Delaware Supreme Court, also relying on *Conyers*, affirmed. App. at 9–11.

Reynolds *pro se* filed a second Rule 35 motion on August 19, 1985. This motion

> not be available so long as there is a possibility of taking a timely appeal from the judgment of conviction.... The Court need not entertain a second motion or successive motions for similar relief on behalf of the same applicant.
>
> Delaware Superior Court Criminal Rule 35 (1975).

9. We must liberally construe *pro se* pleadings. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (*per curiam*). While Reynolds currently frames this claim as "abuse

specifically alleged ineffectiveness of counsel for failing to object to the opening statement and for failing to move for a mistrial. The Superior Court dismissed the motion as repetitive. Although Reynolds initially appealed this decision to the Delaware Supreme Court, he subsequently and voluntarily withdrew the appeal.

Reynolds then filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S. C. § 2254 in the United States District Court for the District of Delaware. His petition asserted five grounds for relief: (1) prosecutorial misconduct arising from the prosecutor's reference to Reynolds's confessions in his opening statement; (2) abuse of discretion by the trial judge in failing *sua sponte* to instruct the jury to disregard the prosecutor's reference to the confessions;[9] and (3) ineffective assistance of counsel for failing (a) to object to the opening statement, (b) to move for a mistrial, and (c) to raise the issue on direct appeal. The magistrate to whom the petition was referred concluded that, although the claims had been exhausted, the court was barred by *Sykes* from considering the merits of the first two claims. App. at 17. The magistrate did reach the merits of the ineffectiveness of counsel claims and recommended that the writ be denied as to those claims. *Id.* at 17–19. The district court adopted the magistrate's report and denied the petition. This appeal followed.

II.

Reynolds's first two claims implicate the due process concern of whether the trial court "fail[ed] to observe that fundamental fairness essential to the very concept of justice."[10] *Donnelly v. DeChristoforo,*

of discretion," this clearly would not raise, if interpreted literally, a claim cognizable in federal court. It was raised in the state courts as a federal due process violation, however, and it is so construed here.

10. The weakness of the state's case against Reynolds underscores the significance of the prosecutor's reference to Reynolds's confessions. As summarized previously, the evidence introduced against Reynolds consisted entirely of Cuffee's various contradictory statements to the Delaware police. We have no occasion to

416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974) (citations omitted). As the district court recognized, however, a federal court must assure itself that a habeas petitioner has complied with relevant state procedural requirements before it can delve into claims of constitutional error in a state conviction. We thus apply the United States Supreme Court's holding in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The *Sykes* Court held that a habeas petitioner's failure to comply with a state procedural requirement that a suppression motion be made prior to trial prevented the federal courts from reaching the merits of a claim that the confession was improperly obtained. *Id.* at 87, 97 S.Ct. at 2506. In considering "the adequacy of [Florida] state [procedural] grounds to bar federal habeas review," *id.* at 81, 97 S.Ct. at 2503, the *Sykes* Court relied on three factors: (1) that the state rule "in unmistakable terms and with specified exceptions require[d] that the motion to suppress be raised before trial," *id.* at 85, 97 S.Ct. at 2506; (2) that "all of the Florida appellate courts refused to review petitioner's federal claim on the merits after his trial," *id.;* and (3) that "their action in so doing [wa]s quite consistent with a line of Florida authorities interpreting the rule in question as requiring a contemporaneous objection." *Id.* at 85–86, 97 S.Ct. at 2505–06. The Supreme Court therefore

concluded that the requirement constituted "an independent and adequate state procedural ground" barring review of the claim by federal courts. *Id.* at 87, 97 S.Ct. at 2506.

The *Sykes* Court went on to hold that federal courts must employ a "cause and prejudice" standard to judge whether a waiver of claims in the state court should be overlooked in federal court. *Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506. Under this test, a defendant must show "cause" for non-compliance with the procedural rule and make "some showing of actual prejudice resulting from the alleged constitutional violation." [11] *Id.* at 84, 97 S.Ct. at 2505.

The application of *Sykes* requires a three —not two—part analysis. Before a court may apply the cause and prejudice standard, it must resolve in the affirmative the question of whether the purported state procedural bar is "independent and adequate." In *Sykes,* the Supreme Court considered the adequacy and independence of a state procedural requirement as a matter of federal law and, in fact, it implicitly rejected the finding of a Florida court "that the admissibility of the [claims] had been raised and decided on direct appeal." 433 U.S. at 75 n. 3, 97 S.Ct. at 2500 n. 3. In decisions following *Sykes,* the Court has always prefaced an inquiry into procedural default with an examination of the state procedure itself. *County Court of Ulster*

---

pass on the constitutionality of the Delaware hearsay exception embodied in Del.Code Ann. tit. 11, § 3507, which allows these prior inconsistent statements to be introduced as substantive evidence against criminal defendants. The issue was not raised in any forum, state or federal, and we note that "evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his [or her] criminal trial." *Bisaccia v. Attorney General of New Jersey,* 623 F.2d 307, 312 (3d Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). Nevertheless, we do observe that Cuffee's only *trial* testimony was to the effect that he saw Reynolds and Tucker in a car on the day of the murder and that Tucker's shirt had blood on it. Moreover, Cuffee's testimony is certainly brought into doubt by the Superior Court's ruling in *State v. Young,* which granted co-defendant Young a new trial based on the lack of credibility of Cuffee's testimony.

11. As noted recently, the *Sykes* Court explicitly rejected the standard described in *Fay v. Noia,* 372 U.S. 391 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963), under which a federal habeas court could refuse to review a defaulted claim only if "an applicant ha[d] deliberately by-passed the orderly procedure of the state courts" ... by personal waiver of the claim amounting to "'an intentional relinquishment or abandonment of a known right or privilege.'" ... At a minimum, then, *Wainwright v. Sykes* plainly implied that default of a constitutional claim by counsel pursuant to a trial strategy or tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he [or she] had not personally waived that claim. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) (citations omitted).

*County v. Allen,* 442 U.S. 140, 149, 99 S.Ct. 2213, 2220, 60 L.Ed.2d 777 (1979) (*"Ulster County "*), is the most dramatic example of this type of analysis. The Court scrutinized New York's statutes and common law to determine whether that state had a contemporaneous objection procedure that applied to the specific facts before it. In gauging the adequacy and independence of the alleged procedural bar, the Court rejected several contentions that were advanced by the Attorney General of New York [12] and examined in detail New York's "cautious contemporaneous objection policy ... embodied in N.Y.Crim.Proc.Law § 470.05(2) (McKinney 1971)." 442 U.S. at 150–51 & nn. 8–10, 99 S.Ct. at 2221 & nn. 8–10. All nine Justices agreed that there was "no support in either the law of New York or the history of th[at] litigation for an inference that the New York courts decided respondents' constitutional claim on a procedural ground." *Id.* at 149, 99 S.Ct. at 2220. The Court therefore proceeded to the merits of the claim. *Cf. Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 2642–43, 91 L.Ed.2d 397 (1986) (discussing Virginia Supreme Court Rule 5:21); *Reed v. Ross,* 468 U.S. 1, 7–8 & n. 5, 104 S.Ct. 2901, 2905–06 & n. 5, 82 L.Ed.2d 1 (1983) (discussing North Carolina requirements); *Engle v. Isaac,* 456 U.S. 107, 124–25 & nn. 26–27, 102 S.Ct. 1558, 1570 & nn. 26–27, 71 L.Ed.2d 783 (1982) (discussing Ohio Rule of Criminal Procedure 30).

We must determine whether the district court correctly relied upon *Conyers v. State,* 422 A.2d 345 (Del.1980) (*per curiam* ), as an "independent and adequate state procedural ground," *Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506, that bars federal habeas review. In *Conyers,* the Delaware Supreme Court explicitly adopted the *Sykes* cause and prejudice test and applied it for the first time to a state post-conviction proceeding under Rule 35. At issue in *Conyers* was the defendant's failure to move for suppression of evidence before or during trial, as required by Delaware Superior Court Criminal Rule 41(e) ("Rule 41(e)").[13] The Delaware Supreme Court stated that the *Sykes* "test gives proper deference to the important State interests sought to be advanced by Rule 41(e)'s contemporaneous objection requirement ... while affording an adequate safeguard that the Rule will not be permitted to result in a miscarriage of justice to a defendant who has failed to comply therewith." *Conyers,* 422 A.2d at 346.

By applying the *Sykes* cause and prejudice standard to suppression issues raised for the first time in a state post-conviction motion pursuant to Rule 35, the Delaware Supreme Court imposed upon Rule 35 a provision found in some other states' post-conviction proceedings, *i.e.,* a requirement that all issues should be raised at the first possible opportunity unless the petitioner can demonstrate reasons to rebut or excuse the presumptive waiver. *See, e.g.,* 42 Pa. Cons.Stat.Ann. § 9544 (Purdon 1982);[14]

**12.** These contentions included (1) the fact that the claim was raised for the first time via post-trial motion, *Ulster County,* 442 U.S. at 148, 99 S.Ct. at 2220; (2) the fact that two state courts did not explicitly state that they were rejecting the claim on its merits, *id.;* (3) the rejection on procedural grounds by New York's highest court of an unrelated state law claim, *id.* at 148 n. 6, 99 S.Ct. at 2220 n. 6; (4) failure of trial counsel to request a jury determination of the claim, *id.* at 148–49 n. 6, 99 S.Ct. at 2220 n. 6; and (5) failure to apply for a petition for writ of certiorari to the highest state court. *Id.* at 149 n. 7, 99 S.Ct. at 2220 n. 7.

**13.** This Rule provides that
[a]n application ... to suppress for use as evidence anything obtained as a result of an unlawful search and seizure shall be made by motion.... The motion shall be made before the trial or hearing in which the property

seized may be used as evidence, unless opportunity therefor did not exist or the moving party was not aware of the grounds for the motion; but the Court in its discretion may entertain the motion at the trial or hearing.
Delaware Superior Court Criminal Rule 41(e) (1975).

**14.** This Pennsylvania statute provides that
an issue is waived if:
(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted or in a prior proceeding actually initiated under this subchapter.
(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his [or her] failure to raise the issue.

N.J.R. 3:22–4 (1988).[15]  Unlike the laws governing post-conviction proceedings in the other states within this judicial Circuit, however, Rule 35 on its face states no procedural limits to its application except that "postconviction relief shall not be available so long as there is a possibility of taking a timely appeal from the judgment of conviction."

It is ironic that Delaware's courts have imposed a procedural bar on themselves, based on a line of cases that tortuously distinguishes between situations where a federal court can review claims arising from state convictions and those where that same federal court must defer out of comity to state court adjudication of the claims. *See Sykes*, 433 U.S. at 78–85, 97 S.Ct. at 2502–06. As a matter of state law, this unexpected application of *Sykes* is, of course, not our concern. As a matter of federal law, however, it raises extremely troubling questions. The Supreme Court "ha[s] consistently held that the question of when and how defaults in compliance with state procedural rules can preclude our consideration of a federal question is itself a federal question," *Henry v. Mississippi*, 379 U.S. 443, 447, 85 S.Ct. 564, 567, 13 L.Ed.2d 408 (1965), and *Sykes* itself left the exact ambit of the cause and prejudice standard "open for resolution in future decisions." 433 U.S. at 87, 97 S.Ct. at 2507. To decide whether *Conyers* provides an "independent and adequate" basis for precluding federal habeas review of Reynolds's claims, we turn to the three factors upon which the Supreme Court relied to so decide in *Sykes*, to wit: whether the state procedural requirement is stated in "unmistakable terms," whether the state courts have refused to review the claims on the merits, and whether the state courts' refusal in this instance is "consistent" with oth-

er state decisions. *Id.* at 85–86, 97 S.Ct. at 2505–06.

■ Notwithstanding the Delaware courts' refusal to consider the merits of Reynolds's claims, we find that the *Conyers* decision does not constitute an "independent and adequate state procedural ground" barring federal courts from habeas review of the due process claim raised here. No specific Delaware procedural rule governs, in "unmistakable terms," *Sykes*, 433 U.S. at 85, 97 S.Ct. at 2505, the precise claim raised in Reynolds's Rule 35 motion, namely, that due process was denied by the prosecutor's over-reaching coupled with the absence of the judge's *sua sponte* limiting instruction or declaration of mistrial. In addition, the Delaware courts' invocation of *Conyers* is not consistent with other state authority. Thus, of the three elements that could support a conclusion that this state procedural requirement is "adequate" to preclude federal review, two are blatantly missing here.

### A.

We can neither find a Delaware rule governing the specific claims raised by Reynolds in his habeas petition nor can we read *Conyers* as creating one. Delaware has no general contemporaneous objection rule. Rule 41(e), which governs the time for making suppression motions, is not relevant here. The language of Rule 41(e)'s "contemporaneous objection" requirement is mandatory; the time for making the motion is explicitly articulated and any deviation therefrom is within the trial court's discretion. Thus Rule 41(e) arguably serves as an "independent and adequate" procedural ground within the meaning of *Sykes* so as to justify the result in *Conyers*. Before us now, however, is not a

---

42 Pa.Cons.Stat.Ann. § 9544 (Purdon 1982).

**15.** This New Jersey Court Rule provides that [a]ny ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, or in a postconviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under

this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted *could not reasonably have been raised in any prior proceeding;* or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey. N.J.R. 3:22–4 (1988).

violation of Rule 41(e), but a very different circumstance: prosecutorial over-reaching caused by the withdrawal of the offer of two confessions *during* a suppression hearing after the prosecutor had already referred to them extensively in his opening statement, and the subsequent failure of the trial court to issue a cautionary instruction.

The state never argued that Reynolds failed to make a Rule 41(e) motion, nor did it point to a rule that might arguably serve as a proxy for Rule 41(e) in Reynolds's case. During Reynolds's Rule 35 proceedings, the Delaware Attorney General alleged that

> [t]hree prior procedures were not utilized by Reynolds. Initially, Reynolds, during trial, when the statements were excluded, made no motion for a mistrial. By mere definition, that motion, as it acts to withdraw the case from the jury, must be made contemporaneously with the damaging error. Secondly, [Delaware] Super.Ct.Crim.R. 33, while not speaking to trial motions, clearly requires that motions for new trial, based on trial error, be asserted no later than 10 days after the rendition of the verdict. Reynolds made no such motion asserting error in the prosecutor's opening remarks in such a timely fashion. Finally, Reynolds did not assign this claim as error in his appeal to the Delaware Supreme Court.

State's post-evidentiary hearing memorandum on defendant's motion for post-conviction relief at 27. However, Delaware Superior Court Criminal Rule 33, which governs motions for a new trial, does not articulate a waiver rule for claims not raised by this motion. Furthermore, *Conyers* did not, in "unmistakable terms;" bar claims that could have been presented in a motion for new trial or on direct appeal. Nor does *Conyers* mention a general contemporaneous objection requirement that might apply to motions for mistrial.

No published decision of the Supreme Court of Delaware after *Conyers* has explicitly stated that the cause and prejudice standard is to be applied in Rule 35 proceedings to any claims other than Rule 41(e) claims, and we cannot read *Conyers* as creating such procedural bars. The language of *Conyers* does not contain even the slightest suggestion that its holding extends beyond suppression motions that were not timely made pursuant to Rule 41(e). The *Conyers* analysis is clearly derived from the existence of a contemporaneous objection rule with respect to suppression motions; it relied on *State v. Herhal,* 307 A.2d 553 (Del.Super.1973), as support for its holding that Rule 41(e) embodies a contemporaneous objection requirement. A subsequent decision only extended the reach of *Conyers* to include situations in which a suppression motion had been made at trial but not raised on direct appeal. *Johnson v. State,* 460 A.2d 539 (Del.1983).

This is not to say that federal courts will never defer to announcements by state courts or legislatures of new rules of procedure that must be followed in post-conviction proceedings. Where a purported new, sweeping procedural requirement is not even explicitly formulated in the opinion upon which the state courts rely to deny review, however, it lacks the requisite degree of specificity and clarity—in short, the "unmistakable terms"—necessary to bar federal courts from habeas review. Whether enunciated by court rule or case law, there is no Delaware procedural rule on point, and therefore Reynolds violated none.

## B.

Turning to the question of whether the Delaware courts' application of *Conyers* to Reynolds's post-conviction proceedings is consistent with other state authorities, there does not appear to be significant case law regarding the application of procedural bars to Rule 35 motions prior to *Conyers.* *See Herhal,* 307 A.2d at 555 (reaching merits of Rule 35 claim despite possible procedural bar); *Curran v. State,* 10 Terry 587, 49 Del. 587, 122 A.2d 126, 128 (Del.), *cert. denied,* 352 U.S. 913, 77 S.Ct. 151, 1 L.Ed.2d 120 (1956) (same). The history of Rule 35 itself belies the sweeping conclusion that a procedural bar exists to all claims raised for the first time in a Rule 35 motion. The seminal Delaware case explaining Rule 35 involved petitioners who had not taken a direct appeal but who had filed, six years after their convictions, petitions for writ of habeas corpus alleging that their convictions were obtained in violation of the Delaware and United States Constitutions. *Curran v. Woolley,* 9 Terry 382, 48 Del. 382, 104 A.2d 771 (Del.1954). In denying the writs, the Delaware Supreme Court explained that the writ was historically confined in Delaware to in-

quiries into the jurisdiction of the sentencing court. Noting the increasing willingness of federal courts to examine state convictions for possible violations of the Constitution or laws of the United States, the Delaware court stated that Rule 35, in contrast to the common law writ of habeas corpus, existed to

> provide an adequate procedure to give a person deprived of his [or her] freedom the opportunity to have the intrinsic fairness of the criminal process under which he [or she] is committed examined into [by the Delaware courts].... Under this rule, any prisoner who claims to have been imprisoned in violation of his [or her] federal constitutional rights may, by motion at any time, move to vacate, set aside or correct his, [or her] sentence....

*Curran*, 104 A.2d at 774. The court did not comment on petitioners' failure to take a direct appeal.[16]

In *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), the Supreme Court held that a state procedural bar would not be considered independent and adequate where the criminal defendant

> could not fairly be deemed to have been apprised of its existence. Novelty in procedural requirements cannot be permitted to thwart [federal] review ... applied for by those who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights.

*Id.* at 457–58, 78 S.Ct. at 1169; *accord James v. Kentucky*, 466 U.S. 341, 348–49, 104 S.Ct. 1830, 1835–36, 80 L.Ed.2d 346 (1984); *Barr v. Columbia*, 378 U.S. 146, 149, 84 S.Ct. 1734, 1736, 12 L.Ed.2d 766 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 301, 84 S.Ct. 1302, 1310,

12 L.Ed.2d 325 (1964); *Wright v. Georgia*, 373 U.S. 284, 290–91, 83 S.Ct. 1240, 1244–45, 10 L.Ed.2d 349 (1963). Rule 35, until *Conyers*, could fairly be read as providing for review of claims that are raised for the first time by post-conviction motion. Indeed, in *Bailey v. State*, 422 A.2d 956 (Del. 1980), which was decided the same year as *Conyers*, the Delaware Supreme Court even adjudicated the merits of claims raised for the first time in a Rule 35 motion. *Id.* at 963–64. As the Court of Appeals for the Eleventh Circuit recently stated, "[w]here the state applies its procedural bar only sporadically," *Oliver v. Wainwright*, 795 F.2d 1524, 1529 (11th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1380, 94 L.Ed.2d 694 (1987), a federal habeas court may go to the merits of the claim.

Moreover, under Superior Court Rule 52 [17] and Supreme Court Rule 8 [18], the Delaware Supreme Court routinely considers claims raised for the first time on direct appeal, if the claims present fundamental constitutional problems. *See Wainwright v. State*, 504 A.2d 1096, 1100 (Del.), *cert. denied*, — U.S. —, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986) (fifth amendment); *Van Arsdall v. State*, 486 A.2d 1, 11 n. 4 (Del. 1984), *vacated*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (sixth and fourteenth amendments); *Passerin v. State*, 419 A.2d 916, 922 (Del.1980) (fourth amendment); *Henson v. State*, 332 A.2d 773, 774 (Del.1975) (sixth amendment); *but see Wright v. State*, 374 A.2d 824, 831 (Del. 1977) (refusing to reach meritless fifth amendment claim). It is not clear if any differences existed in the lenient waiver rules for claims on direct appeal and waiver rules for Rule 35 claims prior to *Conyers*. *Cf. Spencer v. Kemp*, 781 F.2d 1458, 1469 (11th Cir.1986) (*en banc*) (refusing to hold petitioner to stricter direct appeal waiver rules). In at least one Rule 35 appeal decided in the same year as *Conyers*, how-

---

**16.** In *Gural v. State*, 243 A.2d 692 (Del.1968), the Delaware Supreme Court denied a petitioner's request to have his Rule 35 motion treated as a direct appeal and stated that its review was limited to the Superior Court's denial of the motion. *Id.* at 693–94. In *Gural*, as in *Curran*, no mention was made of procedural bar. *Accord Priest v. State*, 227 A.2d 576 (Del.1967).

**17.** Rule 52 defines
(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed al-

though they were not brought to the attention of the Court.
Delaware Superior Court Criminal Rule 52 (1987).

**18.** Rule 8 defines "Questions Which May Be Raised on Appeal:"
Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.
Delaware Supreme Court Rule 8 (1987).

ever, the Delaware Supreme Court considered the merits of a claim that had neither been preserved at trial nor raised on direct appeal. *Bailey,* 422 A.2d at 963–64 (finding sixth amendment claim harmless beyond a reasonable doubt). This lack of consistency in the application of waiver rules on direct appeal and in Rule 35 proceedings provides an additional strand of support for our conclusion that *Conyers* is not an "independent and adequate" procedural bar governing Reynolds's claims. *But cf. Engle v. Isaac,* 456 U.S. 107, 135 n. 44, 102 S.Ct. 1558, 1576 n. 44, 71 L.Ed.2d 783 (1982) ("States have the primary responsibility to interpret and apply their plain error rules.")

In addition, at least two other Courts of Appeals have stated "that federal courts should generally determine questions of procedural default according to the habeas waiver law in effect at the time of the asserted waiver, and that retroactive effect should not be given to such statutes." *Spencer,* 781 F.2d at 1469 (citations omitted); *accord Lumpkin v. Ricketts,* 551 F.2d 680, 682 & n. 2 (5th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977). Even if we were to conclude that a new Delaware procedural rule was created by *Conyers,* we could not also conclude that the rule barred collateral federal review, where it was applied to claims other than Rule 41(e) claims for the first time in the instant case.

The application of the *Conyers* rule by the state courts to Reynolds's claims is not "consistent with a line of [state] authorities interpreting the rule in question as requiring a contemporaneous objection...." *Sykes,* 433 U.S. at 85–86, 97 S.Ct. at 2505–06. In fact, there is a tangible absence of both consistency and state authority here. We must conclude that there is no support for the existence of an "independent and adequate" state procedural requirement, based on the *Sykes* factor of consistency of application.

**C.**

The Delaware courts' repeated application of the *Conyers* holding to Reynolds's claims might persuade us that *Conyers* is an "independent and adequate" rule precluding federal habeas review, were it not for the two countervailing considerations analyzed above.[19] In finding the absence of a procedural bar here, we note that, although "it is a well-established principle of federalism that a state decision resting on an adequate foundation of state *substantive* law is immune from review in the federal courts," *Sykes,* 433 U.S. at 81, 97 S.Ct. at 2503 (emphasis added), *Sykes* itself noted that federal courts have not deferred so automatically to state procedural bars. A habeas petitioner's non-compliance with a purported state procedural rule should not obscure the pre-requisite that the rule itself be "independent and adequate" as a matter of federal law. Although *Sykes* instructed federal courts to accord greater deference to state procedural bars than had been required by the *Fay v. Noia* deliberate bypass test, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963), it did not immunize these requirements from scrutiny. Such scrutiny is particularly appropriate where, as here, the claim being raised is a violation of due process that stems not only from the decisions of counsel but also from prosecutorial over-reaching and the failure of the trial court *sua sponte* to give a curative instruction. We thus join other Courts of Appeals that have reviewed the merits of claims raised in a habeas petition notwithstanding the presence of a state's procedural bar, after determining that the state procedures lacked sufficient independence and adequacy.[20] *See, e.g., Wheat v. Thigpen,* 793 F.2d 621, 625–27 (5th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987); *Spencer v. Kemp,* 781 F.2d 1458, 1469–71 (11th Cir. 1986) (*en banc*); *Hawkins v. LeFevre,* 758 F.2d 866, 872–74 (2d Cir.1985); *but see*

---

**19.** We note that in the obverse situation, that is, where state courts have *not* refused on procedural grounds to review the merits of a claim, this Court will reach the merits of the claims. *Hochman v. Rafferty,* 831 F.2d 1199, 1203 (3d Cir.1987).

**20.** If federal courts decline to review claims of constitutional error because state courts refuse review based upon procedural grounds, and state courts refuse to review such claims because federal courts may refuse out of comity,

then the cause and prejudice standard will ultimately be transformed into a "comity of errors." *Burkett v. Cunningham,* 826 F.2d 1208, 1218 (3d Cir.1987). *Sykes* was never intended to impose additional limits on *states'* review of federal constitutional claims. "Under our federal system, the federal and state 'courts [are] equally bound to guard and protect rights secured by the Constitution.'" *Rose v. Lundy,* 455 U.S. 509, 518, 102 S.Ct. 1198, 1203, 71 L.Ed.2d 379 (1982) (citing *Ex parte Royall,* 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)).

*Runnels v. Hess,* 653 F.2d 1359, 1363 (10th Cir.1981).

## III.

■ The district court denied on their merits Reynolds's claims of ineffectiveness of counsel. These claims focused upon the trial attorneys' failure to request a limiting instruction or a mistrial and appellate counsel's failure to raise the issue of the opening statement on direct appeal. We find that at least two of the three ineffectiveness of counsel claims may not have been exhausted. We therefore will vacate the district court's order insofar as it denies these claims on the merits and remand for further inquiry into the issue of exhaustion.

A Rule 35 motion is the proper vehicle by which to bring ineffectiveness of counsel claims before the Delaware courts. *See Collins v. State,* 420 A.2d 170 (Del.1980); *Casalvera v. State,* 410 A.2d 1369 (Del. 1980). However, in the briefs to the Superior Court on the first Rule 35 motion, as well as on appeal from the denial of that motion to the Delaware Supreme Court, Reynolds framed his arguments solely in due process terms, referring both to the United States and Delaware Constitutions. Although the statement of the issue presented referred to counsel's failure to request a mistrial, no reference was made in the brief to counsel's failure to request a limiting instruction or to raise the issue on direct appeal. Nor was mention made in the brief of violations of Reynolds's sixth amendment right to effective assistance of counsel. While discussing counsel's performance at length, the Superior Court and the Supreme Court opinions focused only upon the *Sykes* cause and prejudice issue, and they never addressed ineffectiveness of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 205, 80 L.Ed.2d 674 (1984).

The motives of Reynolds's two trial attorneys, one of whom also represented him on direct appeal, were fully explored during the two hearings held in connection with the first Rule 35 motion. Thus, it is possible that all the evidence relevant to a determination whether counsel's performance "fell below an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064, has been adduced already. Neither state court made an explicit finding, however, regarding this issue.

After the first round of Rule 35 proceedings, Reynolds filed a *pro se* Rule 35 motion in Delaware Superior Court alleging, *inter alia,* that his trial counsel was ineffective for failing to request a mistrial or limiting instruction. He did not, however, include a claim of ineffectiveness of appellate counsel for failure to raise the claim on direct appeal. The Superior Court denied the motion as repetitive. *State v. Reynolds,* No. IS76–04–0026, 0027, letter op. at 2 (Mar. 12, 1986); *see* Del.Super.Ct.Crim.Rule 35(a). On March 26, 1986, five days before he filed his petition for writ of habeas corpus in federal district court, Reynolds withdrew his appeal from the denial of the second Rule 35 motion to the Supreme Court.

Case law on successive motions under Rule 35 is scant. *See, e.g., United States ex rel. Winsett v. Anderson,* 320 F.Supp. 784 (D.Del.1970), *aff'd.,* 456 F.2d 1197 (3d Cir.1972). It is at least plausible that the Delaware Supreme Court might have entertained the appeal from the denial of the second Rule 35 motion, if only to review for abuse of discretion the trial court's dismissal of the motion as repetitive. *Hinckle v. State,* 6 Storey 35, 189 A.2d 432, 434 (Del. 1963). It is also possible that the Delaware Supreme Court might reinstate the appeal *nunc pro tunc,* should Reynolds make that request in the future. Moreover, the claim that counsel's failure to raise the issue on direct appeal constituted ineffective representation has not been presented to the state courts at all. It is conceivable that this claim might be considered by the state courts on the merits if it were raised in another Rule 35 motion. "At least where a fair reading of the state post-conviction relief statute indicates that a state court might well entertain ... claims ..., and in the absence of a state court decision clearly foreclosing such a result, we cannot conclude that petitioner has demonstrated compliance with the exhaustion requirement." *Santana v. Fenton,* 685 F.2d 71, 75 (3d Cir.1982), *cert. denied,* 459 U.S. 1115, 103 S.Ct. 750, 74 L.Ed.2d 968 (1983). The question whether Reynolds had exhausted these claims at the time he filed the instant petition, or whether "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner," 28 U.S.C. § 2254(b) (1982), was not explored by the district court. *See also Santana,* 685 F.2d at 74–75.

Even if Reynolds demonstrates that state remedies were unavailable at the time he filed the petition, *see Fay,* 372 U.S. at 435, 83 S.Ct. 847, his withdrawal of the appeal from the denial of the second Rule 35 motion might then "constitute[ ] a procedural default that deprived the highest state court of an opportunity to consider his constitutional claim[ ]" of ineffectiveness of counsel for failure to request a limiting instruction or mistrial. *Beaty v. Patton,* 700 F.2d 110, 112 (3d Cir.1983) (*per curiam* ). These claims would then be subject to the "cause and prejudice" analysis of *Sykes.*[21]

Under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), a petition containing both exhausted and unexhausted claims must be dismissed. *Id.* at 522, 102 S.Ct. at 1205. If Reynolds, on remand, can demonstrate that he has exhausted state remedies, and that his waiver of his ineffectiveness claims meets the *Sykes* "cause and prejudice" standard, however, then the merits of all the claims raised in the instant petition may be reached.[22] Because there are unresolved issues whether the claims of ineffectiveness of counsel were fully exhausted and, if so, whether they are procedurally barred, we will vacate the district court's denial of the peti-tion on the merits of these claims and remand for further proceedings.[23]

## IV.

For the foregoing reasons, we will vacate the order of the district court and remand this matter for further proceedings consistent with this opinion.

## SUR DENIAL OF REHEARING

### PER CURIAM:

In their petition for rehearing, appellees raise three points that merit discussion. First, they argue that Delaware Superior Court Criminal Rule 51[1] acts as a procedural bar to claims raised for the first time in a proceeding brought pursuant to Delaware Superior Court Criminal Rule 35, where counsel had made a tactical choice not to object at trial or to present the issue on appeal. We cannot read this specific requirement into the general language of *Conyers v. State,* 422 A.2d 345 (Del.1980) (per curiam). *Conyers* does not refer to, or rely upon, Rule 51. The other cases upon which appellees rely in support of this argument, *see King v. State,* 239 A.2d 707, 708 (Del.1968) (per curiam); *State v. Her-*

---

**21.** *Sykes* had left open the question whether *Fay*'s deliberate bypass test was still applicable to decisions whether to appeal. In *Beaty,* this Court held that, because of habeas petitioner's failure to file an appeal of the denial of a post-conviction petition to the highest Pennsylvania court, he "must demonstrate that this default was not a 'deliberate bypass' of the state court ... because his default involved a decision regarding an appeal." 700 F.2d at 113 (quoting *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)). The Supreme Court has since made it clear, however, that although "counsel's decision not to take an appeal *at all* might [still] require treatment under [the *Fay* ] standard," *Carrier,* 106 S.Ct. at 2648 (emphasis added), "the cause and prejudice test applies to defaults on appeal as [well as] to those at trial." *Id.* at 2647. We find that the situation here falls in the latter category.

**22.** Reynolds has another option, of course. *Rose* suggests that a habeas petitioner may choose to "proceed only with his exhausted claims and deliberately set[ ] aside his unexhausted claims...." 455 U.S. at 520–21, 102 S.Ct. at 1204–05 (plurality opinion). Therefore, if the district court on remand allows Reynolds to amend his petition to drop the unexhausted claims, the court could then proceed to the merits of the exhausted claims.

**23.** We recognize that, where the State has not raised nonexhaustion as a defense and where there are no "unresolved question[s] of fact or of state law [that] might have an important bearing" on the claims, *Granberry v. Greer,* — U.S. ——, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987), we can reach the merits of the unexhausted claims. However, we feel that a remand to the district court for determination of all unresolved issues, including exhaustion, is appropriate in this case.

**1.** This rule provides that:
> Exceptions to rulings or orders of the Court are unnecessary and for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the Court is made or sought, makes known to the Court the action which he desires the Court to take or his objection to the action of the Court and the grounds therefor. Where justice requires the Court may relieve a party from the consequences of failure to assign the proper reasons in support of an objection. If a party has no opportunity to object to a ruling or order, the absence of an objection does not thereafter prejudice him.

Del.Super.Ct.R.Crim.Pro. 51 (1974).

*hal,* 307 A.2d 553, 555 (Del.Super.1973), also fail to discuss the effect of Rule 51 on post-conviction proceedings. In fact, the Delaware courts in *King* and *Herhal* go to the merits of the claims raised, after raising the possible waiver problem. Therefore, to the extent that a waiver rule pursuant to Rule 51 was impliedly articulated in these cases, the procedural default was nonetheless overlooked.

Second, appellees bring to our attention the existence of some twenty unpublished opinions of the Delaware Supreme Court that apply the *Conyers* holding to a variety of claims raised in Rule 35 proceedings. While under Delaware law, such orders have precedential value, *see New Castle County v. Goodman,* 461 A.2d 1012, 1013 (Del.1983), we need not decide the significance of their precedential value here. Each of the cases raised in the petition was decided after Reynolds's trial and direct appeal. Therefore, none of them bear on the question of whether, at the time of the purported waiver in this case, Delaware had a rule that barred claims from being raised for the first time in a Rule 35 proceeding.[2] As we stated earlier, procedural default is determined by the "'waiver law in effect at the time of the asserted waiver.'" Panel op. *supra* at 822.

Finally, appellees contend that various other courts of appeals have supported the proposition that sporadic application of procedural rules by state courts should be overlooked by federal courts. *See, e.g., Gardner v. Ponte,* 817 F.2d 183, 188 (1st Cir.), *cert. denied sub nom. Gardner v. Maloney,* — U.S. —, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987); *Bass v. Estelle,* 705 F.2d 121, 122–23 (5th Cir.), *cert. denied,* 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983); *Hockenbury v. Sowders,* 620 F.2d 111, 113 (6th Cir.1980), *cert. denied,* 450 U.S. 933 (1981). To the extent that these cases stand for such a proposition, they are directly contrary to law of this circuit as enunciated in this case and in *Hochman v. Rafferty,* 831 F.2d 1199, 1202–03 (3d Cir. 1987). We reiterate our holding that one factor in determining adequacy of a state procedural rule is whether the state courts consistently apply the rule. *See Wainwright v. Sykes,* 433 U.S. 72, 85–86, 97 S.Ct. 2497, 2505–06, 53 L.Ed.2d 594 (1977).

---

**2.** In any case, this Court's inability to detect any of these cases after exhaustive research illustrates one reason why the adequacy of a state waiver rule that is unarticulated either by court rule or by published opinion is subject to close scrutiny.